IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **VIVIAN CHEN,** | |
| *Plaintiff,* | Civil Action No.: 25-340 |
| v. | |
| | **COMPLAINT** |
| **THE UNIVERSITY OF TEXAS MEDICAL BRANCH (UTMB)** | JURY TRIAL DEMANDED |
| *Defendant.* | |

Plaintiff Vivian Chen, by and through her undersigned attorneys, Eisenberg & Baum, LLP, brings this action against Defendant The University of Texas Medical Branch (UTMB) for violations of Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794; and the Texas Human Resources Code, Chapter 121.

## PRELIMINARY STATEMENT

1. This civil rights action challenges a state university's systematic denial of effective communication to a deaf doctoral student, forcing her to pay thousands of dollars for accommodations the law requires the university to provide free of charge.

2. Plaintiff Vivian Chen is a qualified doctoral student who is deaf. Her native language is American Sign Language (ASL). Despite repeated requests beginning before her enrollment, Defendant UTMB has categorically refused to provide the necessary auxiliary aids—qualified ASL interpreters or professional Communication Access Realtime Translation (CART)

1

services—instead imposing ineffective technological substitutes that fail to ensure equal access to her rigorous medical education.

3. UTMB's conduct violates three fundamental principles of disability law: (1) public entities must provide auxiliary aids that ensure *effective* communication, not merely some form of communication; (2) public entities must give primary consideration to the disabled individual's preferred method of communication; and (3) public entities cannot charge disabled individuals for required accommodations.

4. UTMB's defense that providing these accommodations constitutes an "undue burden" is demonstrably pretextual. While claiming financial hardship, UTMB operates on an annual budget exceeding $3.3 billion. Yet, UTMB forced Ms. Chen's family to pay $19,260 for accommodations during her first year (2024-2025), with ongoing costs incurred this semester.

5. The cost of the accommodation represents approximately 0.0006% of UTMB's operating budget—equivalent to a person earning $50,000 annually claiming inability to afford a $30 expense. It defies logic that a multi-billion-dollar state institution claims an undue burden for a cost that the student's family managed to cover.

6. As a direct result of UTMB's discriminatory actions, Ms. Chen has suffered academic exclusion, financial exploitation, emotional distress, and the ongoing denial of her civil rights.

## **JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over the ADA and Section 504 claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

8. This Court has supplemental jurisdiction over the claims arising under Texas state law pursuant to 28 U.S.C. § 1367, as these claims form part of the same case or controversy.

9. Venue is proper in the Southern District of Texas, Galveston Division, pursuant to 28 U.S.C. § 1391(b), because the Defendant is located in this district (Galveston, Texas) and a substantial part of the events or omissions giving rise to the claims occurred here.

## PARTIES

10. Plaintiff Vivian Chen is a resident of Texas and a doctoral student in the School of Health Professions at UTMB. Ms. Chen is deaf and is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102, Section 504, 29 U.S.C. § 705(20), and Texas state law.

11. Defendant The University of Texas Medical Branch (UTMB) is a public university and academic health science center located at 301 University Blvd., Galveston, Texas 77555.

12. UTMB is a "public entity" within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1), a recipient of federal financial assistance subject to Section 504, 29 U.S.C. § 794, and a "public facility" under the Texas Human Resources Code, Chapter 121.

## FACTUAL ALLEGATIONS

**A. Ms. Chen's Disability and Communication Needs**

13. Ms. Chen has been deaf since birth. ASL and English in different modalities are her native languages and primary means of communication.

14. Ms. Chen has successfully completed her prior education utilizing ASL interpreters, demonstrating their effectiveness for her academic success.

15. The highly technical nature of medical education—involving complex terminology, rapid exchanges in classroom and clinical settings, and hands-on laboratory work—makes effective communication essential to meaningful participation. Automated systems and partial accommodations are insufficient in this rigorous environment.

**B. UTMB's Systematic Denial of Effective Communication**

3

16. Ms. Chen provided timely notice of her accommodation needs, requesting ASL interpreters and CART services prior to the start of her program in August 2024, giving UTMB ample time to arrange appropriate services.

17. UTMB has maintained a pattern of failure to provide effective communication since Ms. Chen's enrollment:

- a. **August 26, 2024 (Orientation)**: UTMB canceled scheduled ASL interpreters without adequate notice. Hastily substituted remote CART proved ineffective for the setting.

- b. **September 3, 2024 (First Day of Classes)**: No interpreters or CART were provided. Ms. Chen was directed to use Propio ONE, a Video Remote Interpreting (VRI) service unsuitable for the classroom environment.

- c. **October 3, 2024 (Cadaver Lab)**: A critical hands-on learning experience was conducted without appropriate accommodation. Ms. Chen was left disoriented and unable to fully participate in this essential component of medical education.

18. UTMB offered inadequate substitutes that fundamentally failed to provide effective communication:

- a. **VRI Services (Propio ONE)**: Unsuitable for dynamic classroom or laboratory settings, fail in group discussions, and cannot capture laboratory demonstrations or multi-speaker environments.

- b. **Automated Captioning (e.g., Teams Live)**: Insufficient due to documented error rates exceeding 30% with complex medical terminology, and inability to identify speakers in discussions. Ms. Chen documented these inadequacies in writing on September 12, 2024.

    c. **Assistive Listening Devices (X-tag microphone, Cochlear Phone Clip)**: Inappropriately rely on Ms. Chen's personal assistive technology and residual hearing, which is insufficient for complex academic content.

19. Furthermore, alternatives relying on personal devices were prohibited in critical settings like the cadaver laboratory, rendering them entirely useless.

20. The nature of medical education requires different communication accommodations for different learning environments encountered daily. Ms. Chen's curriculum includes large lecture halls with complex medical terminology, hands-on laboratory work requiring manual dexterity, clinical rotations involving patient interaction, small group problem-based learning sessions, and emergency simulation training—each presenting distinct communication requirements that cannot be met by a single accommodation method.

21. CART services provide essential access in lecture-based settings where precise medical terminology, drug names with similar spellings, dosages, and procedural steps must be captured verbatim. In biochemistry and pharmacology courses, where a single letter difference distinguishes between medications with vastly different effects, CART's accurate transcription becomes critical for patient safety training. The searchable transcripts CART generates are necessary study tools when examinations test specific phrasing, definitions, or quotations from professors.

22. ASL interpreters are indispensable for interactive learning environments that constitute the majority of medical training. In anatomy laboratories, Ms. Chen requires both hands free for dissection while receiving real-time instruction about three-dimensional anatomical relationships—making it impossible to simultaneously hold a device to read CART. During clinical skills training, where Ms. Chen must perform physical examinations while receiving feedback, ASL interpreters can maintain positioning within her sightline while her hands remain engaged in medical procedures.

23. Clinical rotations and patient interactions specifically require ASL interpreters to preserve the therapeutic relationship while conveying not merely words but critical nonverbal communication, emotional tone, and urgency essential to medical practice.

24. Ms. Chen's typical academic day demonstrates the necessity of both accommodations. A morning biochemistry lecture requiring precise capture of molecular formulas and drug interactions necessitates CART services, followed immediately by a clinical skills session practicing patient examinations where ASL interpretation is essential for hands-on instruction, then a small group ethical discussion where ASL facilitates natural conversational flow, and ending with a pathology lecture where CART enables accurate terminology capture while simultaneously viewing microscopic images.

25. UTMB's proposed technological alternatives fail to recognize these fundamental pedagogical distinctions. Automated captioning produces error rates exceeding 30% for medical terminology, creating dangerous confusion between similar drug names or anatomical terms—errors that could translate to patient harm in clinical practice. Video Remote Interpreting services cannot accommodate the mobility required in clinical settings, fail entirely in group discussions where multiple speakers interact rapidly, and are prohibited in sterile environments like operating rooms and certain laboratory settings.

26. The complementary nature of ASL interpretation and CART services in medical education means that neither accommodation alone provides equal access. Ms. Chen's voluntary procurement of CART services at personal expense demonstrates her recognition, she would lack full access to lecture content and technical terminology. Conversely, CART alone excludes her from the interactive, hands-on components that comprise a good deal of medical training hours.

27. UTMB's refusal to provide both necessary accommodations forces Ms. Chen into an impossible choice between incomplete access modalities, systematically excluding her from

full participation in either lecture-based or clinical components of her medical education. This forced choice violates the ADA's mandate of effective communication, which requires accommodations that provide access substantially equivalent to that provided to non-disabled students.

**C. UTMB's Bad Faith Interactive Process**

28. The interactive process requires a good faith dialogue to identify effective accommodations. UTMB failed this fundamental obligation.

29. UTMB unilaterally imposed the inadequate alternatives listed above without testing their effectiveness and ignored Ms. Chen's documented explanations of why those alternatives failed.

30. On or about October 8, 2024, UTMB prematurely terminated discussions by invoking an "undue burden" without sufficient justification or financial analysis.

31. On October 14, 2024, UTMB, through Deputy ADA Officer Tammie J. Collins, formally denied Ms. Chen's request for ASL interpreters and CART services.

32. **Primary Consideration Violation**: Federal regulations explicitly mandate that public entities give "primary consideration" to the auxiliary aids and services requested by the individual with a disability. 28 C.F.R. § 35.160(b)(2). UTMB categorically rejected Ms. Chen's preference for ASL interpreters without attempting to honor it or explaining why equally effective alternatives existed.

**D. Financial Exploitation Through Forced Self-Accommodation**

33. Due to UTMB's persistent refusal to provide effective communication, Ms. Chen and her family were compelled to secure and pay for professional CART services themselves to allow Ms. Chen to access her education.

7

34. **Impermissible Cost-Shifting**: Ms. Chen and her family incurred the following out-of-pocket costs for essential services UTMB was legally required to provide:

    a. **2024-2025 Academic Year (Fall, Spring, Summer)**: $19,260

    b. **Fall 2025 Semester**: Ms. Chen continues to incur thousands of dollars in additional costs as UTMB maintains its denial

35. By forcing Ms. Chen to pay for required auxiliary aids, UTMB effectively imposed a surcharge on Ms. Chen due to her disability, which is explicitly prohibited by 28 C.F.R. § 35.130(f).

36. Based on current costs, Ms. Chen faces projected expenses exceeding $75,000 over her four-year doctoral program if UTMB's discrimination continues.

**E. The Pretextual Nature of UTMB's "Undue Burden" Defense**

37. UTMB's assertion that providing these accommodations constitutes an undue financial burden (defined as "significant difficulty or expense" under 28 C.F.R. § 35.164) is demonstrably false given its substantial resources.

38. **UTMB's FY 2025 Financial Resources**:

    a. Total operating budget: **$3,349,019,579**

    b. Net investment income: **$83,474,552**

    c. Educational and General Fund budget: **$1,298,784,011**

    d. Designated Funds (estimated ending balance): **$613,382,845**

    e. Capital Projects (Unexpended Plant Funds): **$143,571,695**

39. **Mathematical Impossibility of Undue Burden**:

    a. The $19,260 figure represents the out-of-pocket costs Ms. Chen's family was forced to pay for partial accommodation (Remote CART services for less than half of her classes). This amount significantly underrepresents the true annual cost of full and

8

effective communication, as Ms. Chen was forced to forgo necessary services for many of her classes due to the prohibitive expense illegally shifted to her by UTMB. This partial cost alone represents approximately 0.0006% of UTMB's total operating budget

b. This cost represents only about **0.023%** of UTMB's net investment income alone

c. UTMB earns sufficient investment income to pay for Ms. Chen's current cost of accommodations in 2024-2025 academic year in less than two hours of a standard business day

40. UTMB's claim is further undermined by the fact that Ms. Chen's family, with vastly fewer resources than a state institution, was able to secure the funds UTMB refused to provide.

## F. Failed Internal Remedies

41. Ms. Chen engaged UTMB's internal processes in good faith for over a year, yet her situation remains unresolved.

42. On October 17, 2024, Ms. Chen, through counsel, sent a detailed letter to Ms. Collins and UTMB Chief Legal Officer Carolanda Bremond Woodgett, contesting the denial and outlining UTMB's legal obligations.

43. After receiving no timely response, counsel sent a follow-up letter in November 2024.

44. Ms. Chen filed an internal complaint alleging discrimination based on disability and failure to engage in the interactive process.

45. On June 11, 2025, UTMB's Department of Internal Investigations (DII) issued findings. While claiming the ADA office met a "minimum threshold" for engagement, the DII acknowledged deficiencies, noting it "would have been more prudent for the ADA office to continue extending the offer to engage in the process" and recommended that the ADA office re-engage with Ms. Chen.

46. Despite this recommendation, UTMB has taken no meaningful action for more than three months. On August 27, 2025, Ms. Chen followed the DII's recommendation and attempted to re-engage in the interactive process by emailing Deputy ADA Officer Tammie Collins to request ASL interpreters and CART services for the Fall 2025 semester. Ms. Collins and the ADA office never responded to her email. As a result, Ms. Chen continues to be denied university-provided effective communication.

### G. Ongoing and Irreparable Harm

47. UTMB's failure to provide appropriate accommodations has significantly harmed Ms. Chen and continues to cause ongoing damage. Ms. Chen suffers:

    a. **Academic harm**: Exclusion from full participation in laboratory work, classroom discussions, and collaborative learning environments. Prior to securing her own CART services, she missed critical information essential to her medical education.

    b. **Financial harm**: Significant ongoing out-of-pocket expenses (over $19,260 to date with continuing costs each semester) for basic access to education that UTMB is legally obligated to provide free of charge.

    c. **Professional harm**: Compromised preparation for her medical career due to incomplete access to training and educational opportunities. Compromised Ms. Chen's ability to network and connect with peers and faculty for future opportunities.

    d. **Dignitary harm and Emotional Distress**: Unnecessary stress, anxiety, humiliation, and isolation resulting from UTMB's failure to ensure effective communication, compounded by the financial burden and daily reminder of second-class citizenship through the denial of equal access.

## CAUSES OF ACTION

### COUNT I
### Violation of Title II of the Americans with Disabilities Act
### (42 U.S.C. § 12131 *et seq.*)

48. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

50. Ms. Chen is a "qualified individual with a disability" within the meaning of the ADA, and UTMB is a "public entity" subject to Title II.

51. UTMB has discriminated against Ms. Chen by reason of her disability through acts and omissions including, but not limited to:

    a. Failing to furnish appropriate auxiliary aids and services (qualified ASL interpreters and professional CART services) necessary to ensure effective communication, in violation of 28 C.F.R. § 35.160(a)(1);

    b. Failing to give "primary consideration" to Ms. Chen's expressed preference for ASL interpreters when determining appropriate auxiliary aids, in violation of 28 C.F.R. § 35.160(b)(2);

    c. Providing inadequate and ineffective accommodations that did not ensure communication with Ms. Chen was as effective as communication with non-disabled students;

    d. Failing to make reasonable modifications to policies, practices, or procedures when necessary to avoid discrimination, in violation of 28 C.F.R. § 35.130(b)(7);

  e. Denying Ms. Chen the opportunity to participate in and benefit from UTMB's services on an equal basis with non-disabled students, in violation of 28 C.F.R. § 35.130(b)(1); and

  f. Imposing a surcharge on an individual with a disability to cover the costs of auxiliary aids and services by forcing Ms. Chen to pay for her own CART services, in direct violation of 28 C.F.R. § 35.130(f).

52. UTMB cannot demonstrate that providing the requested accommodations would constitute a fundamental alteration of its program or an undue burden under 28 C.F.R. § 35.164.

53. UTMB's pattern and practice of discrimination, including its systematic refusal to provide accommodations despite repeated requests and its assertion of a demonstrably pretextual defense, establishes deliberate indifference to Ms. Chen's federally protected rights.

54. As a direct and proximate result of UTMB's violations of Title II, Ms. Chen has suffered and continues to suffer damages.

## COUNT II
### Violation of Section 504 of the Rehabilitation Act of 1973
### (29 U.S.C. § 794)

55. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

56. Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

57. Ms. Chen is an "otherwise qualified individual with a disability," and UTMB receives substantial Federal financial assistance.

58. UTMB has discriminated against Ms. Chen solely by reason of her disability. UTMB's violations include, but are not limited to:

    a. Denying Ms. Chen an equal opportunity to obtain the same result and to benefit from its educational programs as non-disabled students, in violation of 34 C.F.R. § 104.4(b);

    b. Failing to provide necessary academic adjustments and auxiliary aids and services, including the specific regulatory requirement to provide "interpreters or other effective methods of making orally delivered materials available to students with hearing impairments," in violation of 34 C.F.R. § 104.44(a) and 34 C.F.R. § 104.44(d)(1);

    c. Engaging in bad faith failure to participate in the interactive process to determine effective accommodations; and

    d. Forcing Ms. Chen to incur substantial costs for accommodations that UTMB is required to provide at no charge to the student.

59. UTMB's actions demonstrated deliberate indifference to Ms. Chen's federally protected rights.

60. As a direct and proximate result of UTMB's violations of Section 504, Ms. Chen has suffered and continues to suffer damages.

## COUNT III
## Violation of Texas Human Resources Code, Chapter 121

61. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

62. The Texas Human Resources Code guarantees that "persons with disabilities have the same right as persons without disabilities to the full and equal use and enjoyment of any public facility in the state." Tex. Hum. Res. Code § 121.003(a).

63. Ms. Chen is a person with a disability within the meaning of Chapter 121, and UTMB is a public facility subject to its requirements.

64. UTMB has discriminated against Ms. Chen and denied her the full and equal enjoyment of its facilities, programs, and services by failing to provide reasonable accommodations necessary for effective communication and meaningful access to her education.

65. UTMB's discrimination was knowing and intentional.

66. As a direct and proximate result of UTMB's violations of the Texas Human Resources Code, Ms. Chen is entitled to actual damages and any other relief available under Tex. Hum. Res. Code § 121.004.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vivian Chen respectfully requests that this Court enter judgment in her favor and against Defendant UTMB, and grant the following relief:

### A. DECLARATORY RELIEF

67. A declaration that UTMB's policies, practices, and conduct as alleged herein violate Title II of the ADA, Section 504 of the Rehabilitation Act, and the Texas Human Resources Code.

68. A declaration that UTMB may not claim undue burden for accommodations costing approximately 0.0006% of its annual operating budget when such costs are demonstrably affordable to individuals with far fewer resources.

### B. INJUNCTIVE RELIEF

69. **Immediate Relief**: A preliminary and permanent injunction ordering UTMB to immediately (within 7 days of the Court's order):

   a. Provide Ms. Chen with qualified ASL interpreters for all academic activities (including but not limited to classes, laboratories, clinical rotations, group work, office hours, and academic events), giving primary consideration to her request as required by law;

14

  b. Provide professional CART services as a secondary or supplemental accommodation when requested or when ASL interpreters are unavailable.

70. **Systemic Reform**: An injunction ordering UTMB to implement the following within 60 days:

  a. Revise its policies, practices, and procedures to ensure timely provision of reasonable accommodations, including effective communication services, free of charge to students with disabilities;

  b. Provide mandatory ADA and Section 504 compliance training to all faculty, staff, and administrators regarding obligations to provide effective communication and reasonable accommodations for deaf and hard-of-hearing students;

  c. Establish clear procedures for the interactive process that comply with federal requirements;

  d. Take all necessary steps to remedy the academic disadvantages Ms. Chen has suffered due to the lack of accommodations.

## C. DAMAGES

71. Full reimbursement of all out-of-pocket expenses incurred to secure CART services, including but not limited to $19,260 for the 2024-2025 academic year plus all ongoing costs incurred and to be incurred.

72. Compensatory damages in an amount to be determined at trial for educational harm, emotional distress, humiliation, loss of educational opportunities, and other injuries suffered.

73. Prejudgment and post-judgment interest on all monetary awards.

## D. ATTORNEYS' FEES AND COSTS

74. An award of Plaintiff's reasonable attorneys' fees, litigation expenses, and costs incurred in this action, as authorized by 42 U.S.C. § 12205, 29 U.S.C. § 794a(b), and other applicable law.

**E. OTHER RELIEF**

75.  Nominal Damages and such other and further relief as the Court deems just, proper, and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable as of right.

Dated: October 15,  2025                                      Respectfully submitted,

Andrew Rozynski, Esq
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
Attorneys for Plaintiff