United States District Court
Southern District of Texas

**ENTERED**

April 06, 2026

Nathan Ochsner, Clerk

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | | |
|---|---|---|
| VIVIAN CHEN, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00340 |
| | § | |
| UNIVERSITY OF TEXAS MEDICAL | § | |
| BRANCH (UTMB), | § | |
| | § | |
| Defendant. | § | |

### <u>OPINION AND ORDER</u>

Defendant University of Texas Medical Branch (UTMB) moves to dismiss Plaintiff Vivian Chen's failure-to-accommodate claim under Title II of the Americans with Disabilities Act ("ADA") on sovereign immunity grounds. *See* Dkt. 13. For the reasons discussed below, UTMB's motion is denied.

### BACKGROUND[1]

Chen, a doctoral student at UTMB, is deaf. Her native language is American Sign Language ("ASL"). Throughout her academic career, Chen has benefited from accommodations like ASL interpreters and Communication Access Realtime Translation ("CART") services. Prior to beginning medical school at UTMB in August 2024, Chen "provided timely notice of her accommodation needs, requesting ASL interpreters and CART services . . . , giving UTMB ample time to arrange appropriate services." Dkt. 7 at 4.

Chen alleges that "UTMB has maintained a pattern of failure to provide effective communication." *Id*. Chen highlights three specific instances when UTMB disregarded Chen's need for accommodation. The first instance occurred at Chen's August 26, 2024 orientation, when "UTMB canceled scheduled ASL interpreters

---

[1] This background section is taken from Chen's amended complaint, which is the operative pleading. *See* Dkt. 7. At the motion to dismiss stage, I take all of Chen's well-pleaded factual allegations as true.

without adequate notice" and "substituted remote CART" instead.[2] *Id.* The second took place on September 3, 2024, the first day of classes, when Chen was not provided an interpreter or CART (remote or onsite), and was instead "directed to use Propio ONE, a Video Remote Interpreting (VRI) service." *Id.* The third time Chen did not receive accommodation was during an October 3, 2024 cadaver lab.

On September 12, 2024, Chen documented the inadequacies of UTMB's substitute accommodations, including "that the provided VRI and automated captioning resulted in a 30% error rate in technical medical terminology." *Id.* at 5. Chen also noted that "alternatives relying on personal devices were prohibited in critical settings like the cadaver laboratory, rendering them entirely useless." *Id.* Chen was ultimately "forced to rely on her classmates for note-taking and impromptu interpretation of classroom content," which "imposed an inappropriate burden on both Ms. Chen and her classmates, and did not provide Ms. Chen with equal access to her educational program." *Id.*

At the risk of stating the obvious, accuracy is important in the medical profession and, in turn, medical education. As Chen explains in her pleading:

> CART services provide essential access in lecture-based settings where precise medical terminology, drug names with similar spellings, dosages, and procedural steps must be captured verbatim. In biochemistry and pharmacology courses, where a single letter difference distinguishes between medications with vastly different effects, CART's accurate transcription becomes critical for patient safety training. The searchable transcripts CART generates are necessary study tools when examinations test specific phrasing, definitions, or quotations from professors.
>
> ASL interpreters are indispensable for interactive learning environments that constitute the majority of medical training. In anatomy laboratories, Ms. Chen requires both hands to be free for dissection while receiving real-time instruction on three-dimensional anatomical relationships, making it impossible to simultaneously hold a device to read CART. During clinical skills training, where Ms.

---

[2] With remote CART, the captioner is offsite and captions are streamed back in real time. With on-site CART, the captioner is physically present in the same room as the individuals receiving the captions.

Chen must perform physical examinations while receiving feedback. ASL interpreters can maintain positioning within her sightline while her hands remain engaged in medical procedures.

Clinical rotations and patient interactions specifically require ASL interpreters to preserve the therapeutic relationship while conveying not merely words but critical nonverbal communication, emotional tone, and urgency essential to medical practice.

*Id.* at 6–7 (cleaned up).

On October 8, 2024—26 days after Chen documented the inadequacy of UTMB's alternative accommodations—"UTMB prematurely terminated discussions [with Chen regarding her preferred accommodations] by invoking an 'undue burden.'" *Id.* at 8. Chen contends that "UTMB's determination was made without any documented analysis of the University's $3.3 billion operating budget." *Id.* "At no point between September 12, 2024, and October 8, 2024, did UTMB attempt to test, evaluate, or modify the alternatives it had offered in response to Ms. Chen's documented concerns." *Id.* at 9. On October 14, 2024, Deputy ADA Officer Tammie J. Collins formally denied Chen's request for ASL interpreters and CART services.

Chen and her family paid $19,260 during the 2024–2025 academic year to secure CART services for Chen. Chen continues to incur thousands of dollars in costs to obtain these services during the current 2025–2026 academic year. "Based on current costs, Ms. Chen faces projected expenses exceeding $75,000 over her four-year doctoral program if UTMB's discrimination continues." *Id.* at 10. Chen contends that UTMB has "effectively imposed a surcharge on [her] due to her disability, which is explicitly prohibited by 28 C.F.R. § 35.130(f)." *Id.* Chen also alleges that UTMB's claim of undue burden is a pretext for disability discrimination because the cost of Chen's preferred accommodations represents only 0.0006% of UTMB's total operating budget and only 0.023% of UTMB's net investment income. *See id.* at 11–12.

On October 17, 2024, Chen's counsel "sent a detailed letter to UTMB, contesting the denial [of Chen's preferred accommodations] and outlining UTMB's

3

legal obligations." *Id.* at 12. After receiving no response, Chen's counsel "sent a follow-up letter in November 2024." *Id.* Chen then "filed an internal complaint alleging discrimination based on disability and failure to engage in the interactive process." *Id.* UTMB's Department of Internal Investigations (DII) issued findings on June 11, 2025. While the DII concluded that UTMB's ADA office "met a 'minimum threshold' for engagement, the DII acknowledged deficiencies, noting it 'would have been more prudent for the ADA office to continue extending the officer to engage in the process." *Id.* To date, UTMB continues to refuse to provide Chen with ASL interpreters or CART services.

On October 16, 2025, Chen instituted this lawsuit. Chen asserts two failure-to-accommodate claims—one under Title II of the ADA and the other under Section 504 of the Rehabilitation Act. UTMB moves to dismiss only the Title II claim on the grounds that state sovereign immunity deprives this court of subject matter jurisdiction.[3] *See* Dkt. 13. Chen filed a response to UTMB's motion to dismiss. *See* Dkt. 14. UTMB has not filed a reply brief.

## LEGAL STANDARD

### A.   RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up). Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is proper "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A Rule 12(b)(1) challenge may either be facial or factual. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The challenge at issue here is facial, meaning I rely only on the pleadings rather than

---

[3] "UTMB concedes it is a state entity that accepts federal funding and thus has waived sovereign immunity under Section 504 of the Rehabilitation Act." Dkt. 13 at 4 n.1.

extrinsic evidence, accepting Chen's well-pleaded factual allegations as true and viewing them in the light most favorable to her. *See id.*

## B.   SOVEREIGN IMMUNITY AND TITLE II

"Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state." *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996). "The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" includes "any department, agency, . . . or other instrumentality of a State or States or local government." *Id.* § 12131(1)(B).

The Supreme Court has held that, "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006). *Georgia* lays out a three-part test to determine if sovereign immunity is abrogated under Title II of the ADA. Under *Georgia*, I must determine:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159.

## ANALYSIS

UTMB argues that it is entitled to sovereign immunity from Chen's Title II failure-to-accommodate claim. To determine whether UTMB's sovereign

5

immunity has been abrogated, I must apply the three-part test set out in *Georgia*. The first step concerns whether Chen has alleged conduct that plausibly violates Title II.

To plausibly state a Title II failure-to-accommodate claim, Chen must allege facts showing that: (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known UTMB; and (3) UTMB failed to make reasonable accommodations. *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020). "UTMB concedes that [Chen] has established the first two elements of her failure-to-accommodate claim." Dkt. 13 at 6–7. Thus, I need to ascertain only whether Chen has alleged that UTMB failed to make reasonable accommodations.

Chen alleges that she requested ASL interpreters and CART services, but UTMB denied her requests, citing an undue financial burden without providing any financial analysis, and instead offering less effective alternatives. UTMB retorts that it "violate[s] the ADA only when [it is] '*unwilling* to engage in a good faith interactive process.'" Dkt. 13 at 8 (quoting *Thompson v. Microsoft Corp.*, 2 F.4th 460, 468–69 (5th Cir. 2021)) (cleaned up). UTMB contends that because it willingly engaged in the interactive process with Chen, "UTMB's conduct did not violate Title II of the ADA, and sovereign immunity is not abrogated." Dkt. 13 at 8. Chen's allegations suggest otherwise.

Chen alleges that UTMB began substituting its alternative accommodations for Chen's preferred accommodations on her first day of medical school on August 26, 2024. Less than two months later, Deputy ADA Officer Collins formally denied Chen's request for ASL interpreters and CART services citing undue burden. Chen avers that UTMB's undue burden claim is pretextual because UTMB has never provided a "detailed financial analysis" as to why it cannot provide Chen's preferred accommodations. Dkt. 7 at 16.

It is true that Title II "does not require [UTMB] to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service,

program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.164. But "where personnel of [UTMB] believe that the proposed action would . . . result in undue financial and administrative burdens, [UTMB] has the burden of proving that compliance with this subpart would result in such alteration or burdens." *Id.* UTMB has never satisfied its burden to *prove* that Chen's requested accommodations would result in undue burden. Nor did UTMB bother to respond to this argument by filing a reply brief. Indeed, "UTMB's own internal investigation (DII) found that it 'would have been more prudent for the ADA office to continue extending the offer to engage in the process.'" Dkt. 7 at 16. Considering these facts, it is plausible that UTMB failed to engage in good faith in the interactive process, which would constitute a violation of Title II.

Because UTMB does not address *Georgia*'s second and third prongs, I see no need to belabor my analysis. *See United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) ("Courts are essentially passive instruments of government. They . . . normally decide only questions presented by the parties." (cleaned up)). I agree with Chen, however, that UTMB's alleged differential treatment of her, coupled with UTMB's abrupt termination of the interactive process and refusal to substantiate how Chen's preferred accommodations are unduly burdensome, "plausibly impl[ies] that she was irrationally deprived of [equal protection under the law]." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1037 (5th Cir. 2022); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985) ("The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."). "[B]ecause [Chen]'s allegations do not permit [me] to assume that [UTMB] did not violate her [equal protection] rights," UTMB is "not entitled to sovereign immunity at this stage of the litigation." *Pickett*, 37 F.4th at 1019.[4]

---

[4] If the issue were before me—and it's not before me, because UTMB mentions the Fourteenth Amendment in its motion only to articulate *Georgia*'s test—I would conclude that UTMB's alleged conduct violates both Title II *and* the Fourteenth Amendment. Accordingly, *Georgia*'s third prong is irrelevant to this case. *See Georgia*, 546 U.S. at 159

## CONCLUSION

For the reasons discussed above, UTMB's motion to dismiss (Dkt. 13) Chen's Title II claim is denied.

SIGNED this __6th__ day of April 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

(the third prong is relevant only "insofar as [the alleged] misconduct violated Title II but did not violate the Fourteenth Amendment").

8